UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
ANGELA GRANT,

        *Plaintiff*,

        v.

COMMISSIONER OF SOCIAL SECURITY,

        *Defendant*.
----------------------------------X

**MEMORANDUM AND ORDER**

18-cv-5973(KAM)

**MATSUMOTO, United States District Judge:**

        Pursuant to 42 U.S.C. § 405(g), Angela Grant ("plaintiff") appeals the final decision of the Commissioner of Social Security ("defendant"), which found that plaintiff was not eligible for a period of disability and disability insurance benefit payments under Title II of the Social Security Act ("the Act"), on the basis that plaintiff is not disabled within the meaning of the act.  Plaintiff alleges that she is disabled under the Act and is thus entitled to receive those benefits.

        Presently before the court is plaintiff's motion for judgment on the pleadings (ECF No. 14) and defendant's cross-motion for judgment on the pleadings (ECF No. 16).  For the reasons set forth below, plaintiff's motion is GRANTED in part, defendant's motion is DENIED, and the case is remanded for further proceedings consistent with this Memorandum and Order.

**BACKGROUND**

**a. Procedural History**

1

On February 12, 2015, plaintiff Angela P. Grant filed
an application for disability and disability insurance benefits.
(ECF No. 19, Administrative Transcript ("Tr.") 56; ECF No. 1,
Complaint ("Compl.") ¶ 1.)  The date of alleged onset of
plaintiff's disability is January 6, 2014,[1] and plaintiff claimed
that she was disabled as a result of posttraumatic stress
disorder ("PTSD"), depression, and injuries to her head, neck
and back.  (ECF No. 18, Joint Statement of Facts Pursuant to
Individual Motion Practice Rule IV(c)(5) ¶ 1 dated June 6,
2019); Tr. 164, 167.)

On June 10, 2015, the SSA denied plaintiff's
application for benefits on the grounds that plaintiff's
condition was "not severe enough to keep [plaintiff] from
working" and that she was capable of "light work" and "simple
tasks."  (Tr. 67, 74, 80.)  On July 1, 2015, plaintiff requested
a hearing before an Administrative Law Judge ("ALJ").  (Tr. 82.)
On May 16, 2017, plaintiff, represented by Attorney Aba Heiman,
appeared and testified before ALJ John Benson via
videoconference.  (Tr. 12, 29.)  Ruth Baruch also appeared and
gave testimony as a vocational expert.  (Tr. 46.)  By a decision

---

[1] On January 6, 2014, while working as an assistant manager at a residence for
the intellectually disabled, plaintiff was viciously attacked by a patient.
The patient attempted to push plaintiff down the stairs, and repeatedly
slammed plaintiff's head against a wall before the patient was restrained by
other staff members.  Plaintiff suffered injuries to her head, back, and the
left side of her body from the incident and reported symptoms of PTSD.  (Tr.
390.)

dated August 29, 2017, the ALJ determined that plaintiff was not disabled within the meaning of the Act and was thereby not entitled to benefits. (Tr. 12-22.)

On October 1, 2017, plaintiff appealed the ALJ's decision to the Appeals Council. (Tr. 141.) On August 30, 2018, the Appeals Council denied review of decision rendering the ALJ decision the final decision in the case. (Tr. 1-6.)

On October 25, 2018, plaintiff filed the instant action in federal court. (*See generally* Compl.)

**b. Medical and Non-Medical Evidence**

The parties filed a Joint Stipulation of Relevant Facts on June 26, 2019. (ECF No. 18.) By reference the court incorporates those facts herein. Having incorporated the Joint Stipulation of Relevant Facts, the court addresses only the facts relevant to the ALJ's decision.

i.   *Mental Health Treatment*

Medical Opinion of Treating Sources Kari Sherman, PhD and Howard Rombom, PhD

On April 17, 2014, psychologists Kari Sherman, PhD ("Dr. Sherman") and Howard Rombom, PhD ("Dr. Rombom") evaluated plaintiff for her complaints of disturbing memories and images from her workplace assault. (Tr. 390.) Dr. Sherman reported that plaintiff was depressed, anxious, agitated and shaking and reported symptoms of post-traumatic stress disorder ("PTSD").

(Tr. 390-391.)  Plaintiff showed no evidence of a thought disorder, was fully oriented, had a good general fund of information, and good abstract reasoning ability.  (Tr. 390.) Plaintiff reported she was not able to perform physical activities and had an inability to take care of routine activities of daily living.  (Tr. 391.)

On the Beck Depression Inventory, plaintiff reported symptoms of sadness, anxiety, disappointment, fatigue, guilt, concentration-impairment, loss of appetite, worthlessness and sleep disturbance.  (*Id.*)  Plaintiff's Beck Depression Inventory - II score was within the "severe range," and plaintiff reported numbness, tingling, difficulty relaxing, dizziness, and being terrified and nervous on the Beck Anxiety Inventory.  (*Id.*)  Dr. Sherman assigned plaintiff a score of 50 on the global assessment of function ("GAF") scale, indicating serious symptoms.[2] (*Id.*)  Dr. Sherman diagnosed plaintiff with PTSD, pain disorder, and psychological/physical trauma.  (Tr. 391-92.)

On November 19, 2014, Dr. Sherman completed a medical source statement and assigned plaintiff a GAF score of 35, indicating some impairment in reality testing or communication. (Tr. 376.)  Dr. Sherman indicated that plaintiff had no useful function of carrying out simple instructions, maintaining

---

[2] The GAF scale is from 0 to 100; GF is used to report the clinician's judgment of the individual's overall symptom severity and the level of his or her functioning.  (ECF No. 18, at 6 n.3.)

attention for two hours, maintaining regular attendance, or
dealing with normal work stress, or responding appropriately to
changes in a routine setting.  (Tr. 378.)  Dr. Sherman also
indicated that plaintiff was unable to meet competitive
standards or had no useful ability to function in her ability to
perform unskilled work based on plaintiff's reports of feeling
overwhelmed when she has to make decisions.  (Tr. 378.)  Dr.
Sherman also noted that plaintiff had no useful ability to
perform semiskilled and skilled work.  (Tr. 379.)  Dr. Sherman
further noted that plaintiff was seriously limited-to-unable to
meet competitive standards in her ability to interact with
others, travel in unfamiliar places, and use public
transportation.  (*Id.)*  Dr. Sherman estimated that plaintiff
would be absent from work more than four days per month and
opined that plaintiff would have difficulty working on a regular
basis because of her bouts of anger, crying, inability to manage
stress, and suicidal ideations.  (Tr. 380.)

        Plaintiff saw Dr. Sherman between June and July 2016,
and Dr. Sherman noted plaintiff suffered auditory hallucinations
and suicidal ideation.  (Tr. 409.)  Between July 2016 and April
2017, Dr. Sherman completed workers' compensation forms and
opined that plaintiff was totally disabled.  (Tr. 413-18.)

Medical Opinion of Treating Source Vilor Shpitalnik, MD

On September 23, 2014, plaintiff saw psychiatrist Vilor Shpitalnik, MD ("Dr. Shpitalnik") for depression, anxiety, insomnia, nightmares, irritability, and pain.  (Tr. 345.)  On examination by Dr. Shpitalnik, plaintiff was sad and apprehensive.  (Tr. 346.)  Plaintiff showed no signs of psychosis; she had intact memory with some attention/concentration deficits; she had good insight and judgment; and was fully alert and fully oriented.  (Tr. 346.)  Dr. Shpitalnik assigned plaintiff a GAF score of 55-60 indicating moderate symptoms, diagnosed plaintiff with PTSD, recommended continued therapy, and prescribed Lexapro and Seroquel.  (Tr. 346-347.)

On October 24, 2014, plaintiff saw Dr. Shpitalnik for complaints of feeling sad, depressed, and stressed.  (Tr. 351.)  Dr. Shpitalnik reported that plaintiff was fully oriented and had logical thoughts; plaintiff was sad and anxious; she had a constricted affect; she had fair attention/concentration and memory; and had good insight and judgment.  (Tr. 351.)  The doctor found plaintiff's condition to be fair and recommended that plaintiff continue on her medication.  (Tr. 351.)

On December 30, 2014, plaintiff was examined by Dr. Shpitalnik.  (Tr. 348.)  Dr. Shpitalnik noted that plaintiff was depressed and anxious; she had clear speech and goal directed

thoughts; she was cognitively fairly preserved; and had good insight and judgment. (*Id.*)

On March 24, 2015, Dr. Shpitalnik examined plaintiff and noted her to be fully oriented with logical thoughts; her associations were intact; her mood was sad an anxious; she had fair attention/concentration and memory; and she had good insight and judgment. (Tr. 350.)

Medical Opinion of Consultative Examiner Kelly Thomas, Psy.D

On May 13, 2015, plaintiff was consultatively examined by Kelly Thomas, Psy.D. ("Dr Thomas"). (Tr. 394.) On examination, plaintiff was cooperative, fully oriented, and related adequately; she had clear speech, coherent and goal directed thoughts; dysthymic mood and depressed and anxious affect; intact attention and concentration; average intellectual functioning; fair insight/judgment; and impaired memory skills due to emotional distress secondary to anxiety and depression. (Tr. 395-96.) Plaintiff reported to Dr. Thomas that she cared for her personal needs, cooked, cleaned, did laundry, and shopped. (Tr. 396.) Plaintiff also reported to Dr. Thomas that she managed her finances, took public transportation, watched television, read, and listened to the radio. (*Id.*)

Dr. Thomas opined that plaintiff could follow and understand simple directions and instructions; and perform simple tasks independently. (*Id.*) Dr. Thomas found that

plaintiff was moderately limited in: maintaining attention and concentration; maintaining a regular schedule; learning new tasks; performing complex tasks independently; making appropriate decisions; relating adequately with others; and appropriately dealing with stress. (*Id.*) Dr. Thomas diagnosed plaintiff as suffering from schizophrenia, Major depressive Disorder, and recurrent episodes of PTSD. (Tr. 397.) Dr. Thomas found that plaintiff could manage her own funds and her prognosis was good given the consistent treatment provided. (Tr. 397.)

Medical Opinion of Consultative Examiner Amy Theobald, Psy.D

On July 13, 2017, plaintiff was consultatively examined by Amy Theobald, Psy.D. ("Dr. Theobald"). Plaintiff stated that she traveled to the examination via train by herself and reported to Dr. Theobald that she had been in regular education with no reported difficulties learning and that she worked in the past as an assistant manager at a group home and as a peer counselor/supervisor. (Tr. 427.) On examination, Dr. Theobald noted that plaintiff was cooperative, fully oriented, and related adequately, and she had clear speech, coherent thoughts, and dysphoric mood and affect. (Tr. 429.) Dr. Theobald found that plaintiff had impaired attention and concentration; impaired memory; borderline cognitive functioning; and fair insight and judgment. (*Id.*) On

intelligence testing, plaintiff recalled and understood
instructions; her style of responding was deliberate, orderly,
and self-correcting; her attention and concentration were good;
and she showed mild-to-moderate depression during the
evaluation.  (Tr. 433.)

On the Wechsler Adult Intelligence Scale ("WAIS-IV")
administered by Dr. Theobald, plaintiff achieved a full-scale IQ
of 66.  (Tr. 434.)  Dr. Theobald stated, however, that the
results of plaintiff's intelligence testing "revealed that
[plaintiff's] cognitive functioning is best understood by her
performance on specific indices, indicating particular strengths
and weaknesses, and not by her Full Scale [IQ] score alone."
(Tr. 435.)  Dr. Theobald added that plaintiff's "Full Scale IQ
score may not be an accurate measure of her full cognitive
abilities."  (Tr. 435.)  Plaintiff reported to Dr. Theobald that
she cared for her personal needs, prepared meals, cleaned, did
laundry, and shopped independently.  (Tr. 429.)  Plaintiff told
Dr. Theobald that she managed her finances, occasionally drove,
and rarely took public transportation.  (Tr. 429-30.)  Dr.
Theobald opined that plaintiff had mild limitations in her
abilities to understand, remember, and apply simple directions
and instructions.  (Tr. 430.)  Plaintiff had moderate
limitations in her abilities to: understand, remember, and apply
complex directions and instructions, use reason and judgment to

make work-related decisions; interact adequately with supervisors, co-workers, and the public; sustain an ordinary routine and regular attendance at work; regulate emotions; control behavior; and maintain well-being.  (*Id.*)

In a medical source statement dated July 13, 2017, Dr. Theobald opined that plaintiff had mild limitations in her abilities to understand and remember simple instructions and make judgments on simple work-related decisions.  (Tr. 438.) Plaintiff had moderate limitations in: carrying out simple instructions; understanding, carrying out, and remembering complex instructions; making judgments on complex work-related decisions; interacting with others; and responding to usual work situations and changes in a routine setting.  (Tr. 438-39.)  Dr. Theobald states that plaintiff's "level of depression has had impact [sic] on [plaintiff's] ability to manage self and adapt to stress.  She was hospitalized for suicide attempt in past and struggles to manage symptoms."  (*Id.* at 439.)  Dr. Theobald concluded that plaintiff's examination was consistent with psychiatric problems, but they were "not. . . significant enough to interfere with [plaintiff's] ability to function on a daily basis."  (Tr. 430.)

Medical Opinion of Non-Examining State Agency Psychiatric
Consultant C. Anderson, MD

On May 27, 2015, C. Anderson, MD ("Dr. Anderson"), a non-examining State agency psychiatric consultant, reviewed the evidence of record and opined that plaintiff had mild limitations in activities of daily living and mild difficulties in maintaining social functioning.  (Tr. 61.)  Dr. Anderson further opined that plaintiff experienced moderate difficulties in maintaining concentration, persistence, or pace.  (*Id.*) Plaintiff was found to have no repeated episodes of decompensation.  (*Id.*)  Dr. Anderson opined that plaintiff was not significantly limited in the following areas, among other areas: the ability to carry out very short and simple instructions, the ability to sustain an ordinary routine without special supervision, the ability to work in coordination with or in proximity to others without being distracted by them, the ability to make simple work-related decisions, the ability to interact appropriate with the general public, the ability to ask simple questions or request assistance.  (Tr. 64.)  Dr. Anderson also assessed plaintiff's exertional limitations and found that plaintiff could occasionally lift and/or carry up to 20 pounds and could stand and/or walk for about six hours in an eight-hour workday.  (Tr. 62.)

Dr. Anderson opined that the evidence "is not consistent with any marked functional impairments due to a psych impairment" and that there "is no permanency with respect to the

psychological impairment related to the work incident of
1/6/14." (Tr. 65.)  Further, Dr. Anderson opined that the
"evidence. . . does not demonstrate ongoing marked impairments
in [plaintiff's] ability to understand, concentrate, remember,
adapt, relate, or persist with tasks on a sustained basis."
(*Id.*)

ii.  *Physical Health Treatment*

On April 29, 2014, an MRI of plaintiff's lumbar spine
showed straightening of the curvature of the lumbar spine with
some loss of the normal lordosis; posterior disc herniation and
annular tear at the L5-S1 level; posterior disc bulges at the
L1-L2 through L4-L5 levels; and an incidental finding of a
partially ruptured 3.4cm adnexal cyst.  (Tr. 274-75.)

On June 3, 2014, electromyography ("EMG") findings of
plaintiff's upper extremities were within normal limits and
showed no evidence of neuropathy, but the test was limited due
to poor tolerance of the EMG.  (Tr. 329.)  On June 6, 2014,
plaintiff had magnetic resonance imaging ("MRI") of her brain.
(Tr. 278.)  The MRI showed partial empty sella and mild
inflammatory changes of paranasal sinuses.  (Tr. 278.)  On June
10, 2014, EMG findings of plaintiff's lower extremities were
within normal limits and showed no evidence of radiculopathy.
(Tr. 324.)  Examination of the tested muscles was limited due to
poor patient tolerance for the examination.  (Tr. 324.)  On

December 2, 2014, plaintiff received a lumbar epidural steroid injection for her back pain.  (Tr. 362.)

Between November 2015 and January 2016, plaintiff attended physical therapy for her neck and back pain.  (Tr. 290, 292-96, 303.)  Clinical testing revealed positive straight leg raise, positive compression testing, and tenderness and spasms of the paraspinal muscles.  (Tr. 303.)  On March 3, 2016, an MRI of plaintiff's cervical spine showed nonspecific straightening, small central disc herniation at C3-4 and C6-7, mild disc bulges at C4-5 and C5-6, the former with a posterior central annular fissure, and a likely cyst.  (Tr. 406.)  On March 14, 2016, an MRI of plaintiff's lumbar spine showed no significant change from previous MRIs.  (Tr. 276-77.)

Medical Opinion of Michael Hearns, MD

On March 7, 2014, Michael Hearns, MD ("Dr. Hearns") performed range of motion and muscle testing of plaintiff's cervical and lumbar spines and Dr. Hearns' impression was a moderate decrease in strength.  (Tr. 382-384.)  On November 9, 2015, Dr. Hearns performed range of motion and muscle testing of plaintiff's cervical and lumbar spines, and Dr. Hearns's impression was a moderate decrease in strength.  (Tr. 299-300.)

On May 23, 2016, plaintiff saw Dr. Hearns and complained of neck pain, back pain radiating to the left leg, and left lower leg and left upper extremity weakness.  (Tr.

283.)  On examination, plaintiff had a positive straight leg
raise on the left side; positive compression test; decreased
sensation and weakness of the left leg, but normal sensation in
the other extremities; 3/5 weakness in the left leg; 4/5
weakness in the left upper extremity; and an absent deep tendon
reflex in the lower extremity.  (Tr. 283.)  Dr. Hearns opined
that plaintiff could: lift, carry, push, and pull up to ten
pounds and could occasionally sit, stand, walk, climb, kneel,
bend, reach overhead, reach low, drive, operate machinery, and
be exposed to temperature extremes.  (Tr. 283-84.)  Plaintiff
could frequently grasp and perform fine manipulation.  (Tr.
284.)  Dr. Hearns opined that plaintiff had a 75% disability for
workers' compensation purposes and her prognosis was guarded.
(Tr. 283-84.)

## Legal Standard

### a. Standard of Review

Unsuccessful claimants for disability benefits under
the Act may bring an action in federal district court seeking
judicial review of the Commissioner's denial of their benefits
"within sixty days after the mailing . . . of notice of such
decision or within such further time as the Commissioner of
Social Security may allow."  42 U.S.C. §§ 405(g), 1383(c)(3).  A
district court, reviewing the final determination of the
Commissioner, must determine whether the correct legal standards

were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

A district court may set aside the Commissioner's decision only if the factual findings are not supported by substantial evidence or if the decision is based on legal error. *Burgess v. Astrue,* 537 F.3d 117, 127 (2d Cir. 2008). "Substantial evidence is 'more than a mere scintilla," and must be relevant evidence that a reasonable mind would accept as adequate to support a conclusion. *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971)). If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld. 42 U.S.C. § 405(g). Inquiry into legal error "requires the court to ask whether 'the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).

The reviewing court does not have the authority to conduct a *de novo* review, and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result. *Cage v. Comm'r*, 692 F.3d 118, 122 (2d Cir. 2012).

**b. Five-Step Analysis of Disability Claimants**

To receive disability benefits, claimants must be "disabled" within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). A claimant is disabled under the Act when she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Shaw v. Chater*, 221 F.3d 126, 131–32 (2d Cir. 2000). The impairment must be of "such severity" that the claimant is unable to do her previous work or engage in any other kind of substantial gainful work. 42 U.S.C. § 423(d)(2)(A).

"The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999)).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether the claimant's condition meets the Act's

definition of disability.  *See* 20 C.F.R. § 404.1520.  This

process is essentially as follows:

> [I]f the Commissioner determines (1) that the
> claimant is not working, (2) that he has a 'severe
> impairment,' (3) that the impairment is not one
> [listed in Appendix 1 of the regulations] that
> conclusively requires a determination of
> disability, and (4) that the claimant is not
> capable of continuing in his prior type of work,
> the Commissioner must find him disabled if (5)
> there is not another type of work the claimant can
> do.

*Burgess*, 537 F.3d at 120 (quoting *Green-Younger v. Barnhart*, 335

F.3d 99, 106 (2d Cir. 2003) (internal quotation marks omitted));

*see also* 20 C.F.R. § 404.152(a)(4).  At any of the previously

mentioned steps, if the answer is "no," then the analysis stops

and the ALJ must find claimant not disabled under the Act.

During this five-step process, the Commissioner must

consider whether "the combined effect of any such impairment . .

. would be of sufficient severity to establish eligibility for

Social Security benefits." 20 C.F.R. § 404.1523.  Further, if

the Commissioner does find a combination of impairments, the

combined impact of the impairments, including those that are not

severe (as defined by the regulations), will be considered in

the determination process.  20 C.F.R. § 416.945(a)(2).

In steps one through four of the sequential five-step

framework, the claimant bears the "general burden of proving . .

. disability." *Burgess*, 537 F.3d at 128; *see also DeChirico v.*

17

*Callahan*, 134 F.3d 1177, 1179-80 (2d Cir. 1998).  In step five, the burden shifts from the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's residual functional capacity ("RFC"), age, education, and work experience, the claimant is "able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

## DISCUSSION

### a.  The ALJ's Disability Determination

Using the five-step sequential process to determine whether a claimant is disabled as mandated by 20 C.F.R. § 416.971, the ALJ determined at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 6, 2014.  (Tr. 14.)

At step two, the ALJ found that plaintiff suffered from the severe impairments of degenerative disc disease of the cervical and lumbar spine, depression, anxiety, and PTSD.  (*Id.*)

At step three, the ALJ determined that from January 6, 2014 through the date of the hearing, plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 of the regulations, 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526, although the ALJ considered listing 12.02, 12.04, and 12.06. (Tr. 15-16.)

At step four, the ALJ found that plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a) with the following limitation: plaintiff requires the option to alternate between sitting and standing at 45-minute intervals allowing her to remain in the new position for three minutes without needing to leave the work station; she can occasionally climb ramps and stairs, but cannot climb ladders or scaffolds; she can occasionally balance, stoop, crouch, and kneel, but cannot crawl; she can tolerate occasional interaction with co-workers, and would be able to tolerate brief periods of more intensive interaction to include frequent interaction during an initial training period of up to 30 days, but she could not tolerate interaction with the public as part of her job duties; and she can perform simple tasks.  (Tr. 16-17.)

In arriving at this RFC, the ALJ assigned "great weight" to the opinion of the non-examining State agency psychologist as this source "enjoys intimate familiarity with the disability program and is highly trained in its rules and definitions."  (Tr. 19.)

The ALJ assigned "significant weight" to the opinions of Dr. Porter, Dr. Thomas, and Dr. Theobald as these sources "supported their conclusions with objective clinical findings and data" and were "internally consistent, consistent with one another, and generally consistent with the medical evidence of

record." (Tr. 19.) The ALJ assigned "significant weight" to the opinion of Dr. Yevsikova as her conclusions "are generally consistent with her findings upon objective exam, as well as the generally benign findings with other sources." (*Id.*) The ALJ also assigned significant weight to the opinion of Dr. Hearns "only to the extent that it is consistent with the ability to perform a range of full-time work" as later evidence established that "claimant is at least slightly less impaired." (Tr. 20.)

The ALJ assigned "little weight" to the April 2014 co-signed opinion of Dr. Sherman and Dr. Spektor as the ALJ found that they "based their conclusions exclusively upon the claimant's subjective statements" and the reduced reliability from a longitudinal perspective due to their evaluation taking place shortly after the January 2014 incident. (*Id.)* The ALJ also assigned "little weight" to the opinions of Dr. Sherman because she "failed to provide objective support for her conclusions" and "other evidence indicates that claimant is less impaired." (*Id.)*

The ALJ assigned "little weight" to the opinion of neurologist Dr. Finkel that the claimant is "severely disabled." (*Id.)* Although the ALJ found that Dr. Finkel had supported his assessment with objective clinical findings, the ALJ stated that Dr. Finkel had failed to provide precise function-by-function work-related limitations. (*Id.)*

The ALJ concluded that the claimant is unable to perform past relevant work as a residential rehabilitation aide because that job was performed at the medium level of exertion, and plaintiff was limited to light work.  (*Id.*)

At step five, the ALJ found that plaintiff's RFC to perform the full range of sedentary work was impeded by additional limitations.  (Tr. 21.)  After consulting with the vocational expert, the ALJ concluded that plaintiff was capable of performing work available in the national economy as a table worker, DOT 739.687-182, at the sedentary exertion level; touch-up inspector, DOT 726.684-110, at the sedentary exertion level; or as a surveillance system monitor, DOT 379.367-010, at the sedentary exertion level.  (*Id.*)  The ALJ stated that based on the testimony of the vocational expert and considering the claimant's age, education, work experience, and RFC, plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  (Tr. 21-22.)

Thus, the ALJ concluded that plaintiff was not disabled within the meaning of the Act from January 6, 2014 through the date of the ALJ's decision.  (Tr. 21.)

### b. The RFC Is Not Supported by the Medical Opinion Evidence

*i. The ALJ erred in not considering whether plaintiff's impairments met or equaled the criteria for listing 12.05(C).*

21

Plaintiff asserts that the ALJ erred by failing to discuss whether plaintiff met the requirements of listing 12.05(C) in his step three determination.[3] (ECF No. 15, Plaintiff's Brief ("Pl. Br.") 14-17.)  The Commissioner concedes that the ALJ "did not specifically mention Listing 12.05" and "might have been more specific in detailing the reasons for concluding that plaintiff's condition did not satisfy a listed impairment." (Def. Br. 5, n. 2.)  The Commissioner nevertheless asserts that the court should not remand if it is able to glean the ALJ's rationale by "look[ing] to other portions of the ALJ's decision." (*Id.*)  The court agrees with plaintiff that the ALJ committed legal error and remands for the purpose of considering and explaining whether plaintiff met the listing 12.05(C) in the step three determination.

A plaintiff qualifies as intellectually disabled under listing 12.05(C) if she has a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A § 12.05(C); *see also Keitt v. Barnhart*, No. 04-CV-1347 (FB), 2005 WL 1258918, at *5 (E.D.N.Y. May 27, 2005).  District

---

[3] Plaintiff states that "we need not explore listing 12.05D, which considers whether there are 'marked' limitations in ADL or social functioning." (Pl. Br. 18.)  Thus, the court does not discuss the merits of this argument. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Part A § 12.05(D).

courts in the Second Circuit that have addressed listing 12.05(C) have utilized the "severity test," which assesses whether the claimant's other impairments were severe enough to interfere with her work function. *See Marmer v. Colvin*, No. 13-CV-2787 (FB), 2014 WL 1365471, at *4 (E.D.N.Y. Apr. 7, 2014); *see also Keitt v. Barnhart*, No. 04-CV-1347 (FB), 2005 WL 1258918, at *5 (E.D.N.Y. May 27, 2005); *see also Baneky v. Apfel*, 997 F.Supp. 543, 547 (S.D.N.Y. 1998). Plaintiff must show that she is unable "to cope with the challenges of ordinary everyday life." *Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012) (quoting *Novy v. Astrue*, 497 F.3d 708 (7th Cir. 2007)).

The ALJ did not consider whether plaintiff suffers from a mental impairment, considered singly and in combination, that meets or medically equals the criteria of listing 12.05. (Tr. 15.) The ALJ found, however, that plaintiff suffers from the following severe mental health impairments: "depression; anxiety; and posttraumatic stress disorder (PTSD)." (Tr. 14.)

Plaintiff contends that she meets the criteria of an intellectual disability under listing 12.05(C) because (1) she possessed a WAIS-IV Full-Scale IQ score of 66 and (2) the ALJ failed to consider "whether [plaintiff's] depression, or her cervical and/or lumbar condition imposed any 'significant work-related limitation of function'." (Pl. Br. 15.) The ALJ assigned "significant weight" to Dr. Theobald's opinion, and

defendant does not contest that plaintiff's WAIS-IV Full Scale IQ score is within the range set forth in listing 12.05(C). (ECF. No. 17, Defendant's Brief ("Def. Br.") ¶ 5; Tr. 19.) Thus, the court accepts that plaintiff's WAIS-IV Full-Scale IQ score of 66 is qualifying within the range set forth under listing 12.05(C).

The question is whether plaintiff meets the second part of listing 12.05(C), *i.e.* whether plaintiff's physical or other mental impairments impose "an additional and significant work-related limitation of function." Because there is ample evidence in the administrative record that plaintiff suffers from other physical and mental impairments, which significantly hinder her work-related functioning, the court cannot find that the ALJ's decision was supported by substantial evidence.

In finding that plaintiff suffers from moderate limitations in understanding, remembering, or applying information; interacting with others; and in concentrating, persisting, or maintaining pace, the ALJ noted that plaintiff is a high school graduate, completed a two-year business program, takes care of her daughter, has had a romantic relationship, used public transportation, and is able to shop independently. (Tr. 15-16.) The ALJ failed to note, however, that plaintiff did not graduate from high school until the age of 20, currently lives with her aunt, receives daily help from her father in

caring for her daughter, her social interactions with those outside of her family are only occasional, and she rarely shops alone.  (Tr. 35-37, 43-44.)  Furthermore, the ALJ found that plaintiff was only moderately limited in adapting or managing herself, though the ALJ acknowledged that plaintiff "experienc[es] significant social stressors," and the record reflects that plaintiff was previously hospitalized for a suicide attempt, and has reported difficulty in managing her depression.  (Tr. 16, 438-39.)

Based on these factual circumstances, the court cannot conclude that the substantial evidence supported the ALJ's determination.  The court declines to cherry-pick certain factual evidence while ignoring contrary evidence.  *Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010).  Moreover, because the court is "unable to fathom the ALJ's rationale in relation to the evidence in the record," the court remands for further findings and a clearer explanation for the ALJ's decision. *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982); *Baneky*, 997 F. Supp. at 547 (finding it "necessary" to remand for specific findings where the court cannot determine from the record whether any of the "limitations identified by plaintiff, beyond his low IQ, satisfies the second prong of Section 12.05(C)).

For the foregoing reasons, the court must remand.  On remand, the ALJ should consider whether any of plaintiff's severe mental and physical impairments impose a significant work-related limitation.  Further, the ALJ should consider if the combination of severe impairments is of equal medical significance to the criteria set forth in listing 12.05(C).

ii. *The ALJ erred in weighing the medical evidence in the record.*

Further, plaintiff contends that the ALJ failed to properly weigh the medical evidence of record as required under 20 C.F.R. § 404.1527(d).  (Pl. Br. 18.)  Defendant contends that the ALJ reasonably accorded little weight to Dr. Sherman's opinion that plaintiff was seriously limited, unable to meet competitive standards, or had no useful ability to function, because Dr. Sherman's opinion was predominantly based on plaintiff's subjective statements.  (Def. Br. 8.)  Defendant further asserts that Dr. Sherman's opinion was internally inconsistent.  The court agrees with plaintiff that the medical evidence was not properly weighed by the ALJ, and for this reason, the court also remands.

When controlling weight is not given to a treating physician's medical opinion,[4] the ALJ must consider various

---

[4] Because plaintiff's application for disability and disability insurance benefits was filed before March 27, 2017, the recent changes reflected in C.F.R. § 404.1520c do not apply, and under C.F.R. § 404.1527(a)(2)(c), the

"factors" to determine how much weight to give the opinion including: (i) the length of the treatment relationship and frequency of the examination; (ii) the nature and extent of the treatment relationship; (iii) the extent to which the opinion is supported by medical and laboratory findings; (iv) the physician's consistency with the record as a whole; and (v) whether the physician is a specialist. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2).  The regulations also require that the ALJ "always give good reasons" in determining the weight assigned to the claimant's treating source's opinion. *See* 20 C.F.R. § 416.927(c)(2); *see also Schaal v. Apfel*, 134 F.3d 496, 503 (2d Cir. 1998).  The ALJ is not required to cite each factor explicitly in his decision, but must ensure he applies the substance of the rule.  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).  This requirement greatly assists the court's review of the Commissioner's decision and "let[s] claimants understand the disposition of their cases." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999).

The court finds that the ALJ did not provide good reasons for assigning "little weight" to Dr. Sherman's opinion. As the treating source, Dr. Sherman's opinion is "(1) binding on

---

treating source's opinion is generally assigned added or possibly controlling weight.

the fact-finder unless contradicted by substantial evidence and (2) entitled to some extra weight, even if contradicted by substantial evidence, because the treating source is inherently more familiar with a claimant's medical condition than are other sources." *Schisler v. Sullivan*, 3 F.3d 563, 570 (2d Cir. 1993).

First, the ALJ concluded that Dr. Sherman "failed to provide a narrative explanation or objective support for her conclusions." (Tr. 20.)  However, as a general matter, "objective" findings are not required in order to find that an applicant is disabled.  *See Donato v. Sec. of Dep't of Health and Human Servs.*, 721 F.2d 414, 418-19 (2d Cir. 1983). Moreover, it is not clear from the ALJ's decision that the ALJ reviewed all of Dr. Sherman's treatment records.  (Tr. 405-12.) Dr. Sherman's psychological evaluation dated November 19, 2014, co-signed with Dr. Spektor, provides a detailed explanation of plaintiff's psychological assessment and evaluation of her PTSD diagnosis, which resulted in a GAF score of 50.  (Tr. 269-72.) It is also troublesome that the ALJ discounted Dr. Sherman's initial April 2014 co-signed opinion, due in part to reduced reliability from a longitudinal perspective, but does not refer to the re-evaluation on November 19, 2014 that was conducted more than ten months after the January 2014 incident.[5]  (Tr. 20.)

---

[5] It should also be noted that the ALJ appears to have referenced the record incorrectly as the April 2014 opinion was co-signed with Dr. Rombom, not Dr. Spektor.  (Tr. 390-91.)

Defendant states that "Dr. Sherman's GAF score is of no moment because it overstates the clinical significance of GAF scores."[6]   (Def. Br. 9.)   However, the Social Security Administration ("SSA") issued guidance "instruct[ing] ALJs to treat GAF scores as opinion evidence; the details of the clinician's description, rather than a numerical range, should be used."   *Mainella v. Colvin,* No. 13-CV-2453-JG, 2014 WL 183957, at *5 (E.D.N.Y. Jan. 14, 2014).   Therefore, the ALJ should have considered the treatment notes in Dr. Sherman's medical source statement to support the GAF assessment of 35 and it is not clear from the record that the ALJ has done so. (Tr. 376-81.)

Second, the ALJ stated that "other evidence . . . indicates that the claimant is less impaired" than Dr. Sherman's opinion would indicate.   (Tr. 20.)   Dr. Sherman's opinion indicated, *inter alia*, that plaintiff had no useful function in carrying out simple instructions, maintaining regular attendance, responding appropriately to changes.   (Tr. 378-81.) The Second Circuit has held that the crucial factors in any

---

[6] Defendant points to the DSM-5 eliminating the use of GAF scores in favor of the World Health Organization Disability Assessment Schedule (WHODAS) as further evidence that Dr. Sherman's opinion does not provide objective evidence.   (Def. Br. 9.)   However, the GAF can be reliable, valid, and sensitive to change over time and the American Psychiatric Association (APA) stated that its limitations are dependent on the rater's training. Liza H. Gold, *DSM-5 and the Assessment of Functioning: The World Health Organization Disability Assessment Schedule 2.0 (WHODAS 2.0)*, Journal of the American Academy of Psychiatry and the Law Online, 42 (2) 173-181 (June 2014).

determination must be set forth with sufficient specificity to enable the court to determine if it is supported by substantial evidence. *Ferraris* v. Heckler, 728 F.2d 592, 587 (2d Cir. 1984); *see also Williams v. Astrue*, No. 09-CV-3997, 2010 WL 5126208, at *17-19 (E.D.N.Y. December 9, 2010) (finding the ALJ's failure to reconcile materially divergent RFC opinions of plaintiff's treating physician and non-examining medical expert to be a ground for remand); *see also Pratts v. Charter*, 94 F.3d 34, 39 (2d Cir.1996) (noting that remand is appropriate where the reviewing court is "unable to fathom the ALJ's rationale in relation to the evidence in the record without further findings or clearer explanation for the decision").

The ALJ has not set forth, with sufficient specificity, its consideration of Dr. Sherman's opinion in the record.  The ALJ's statement that "[a]dditionally, other evidence as described above indicates that claimant is less impaired," does not properly reconcile the opinion of Dr. Sherman with the record as a whole.  (Tr. 20.)  Though Dr. Sherman's opinion as to the severity of plaintiff's limitations appear to be inconsistent with certain other portions of the record, this apparent conflict necessitates further explanation. (Def. Br. 8; Tr. 390; *see Duncan v. Astrue*, No. 09-CV-4462 (KAM), 2011 WL 1748549, at *17 (E.D.N.Y. May 6, 2011) (remand necessary to further clarify good reasons that treating

30

physician was not given controlling weight when medical evidence
opinion is both in conflict and in line with substantial
evidence).)  This reconciliation is especially important as Dr.
Sherman estimated that plaintiff would be absent from work more
than four days per month, and the vocational expert specifically
stated that a hypothetical employer would not tolerate an
employee missing even two days of work per month.  (Tr. 49,
380.)

Additionally, plaintiff asserts that the ALJ's
judgment in only affording "great weight" to Dr. Anderson, the
non-examining state agency psychological consultant, was
improper.  (Pl. Br. 14-15; Tr. 16, 18.)  The court agrees.  The
opinions of non-examining medical personnel "cannot, in
themselves and in most situations, constitute substantial
evidence to override the opinion of a treating source."
*Schisler*, 3 F.3d at 570.  The ALJ concluded that only the
opinion of the non-examining State agency psychologist, Dr.
Anderson, should be afforded "great weight" as she had an
"intimate familiarity with the disability program", was a
specialist opining within her field of expertise, and her
opinions were internally consistent and generally consistent
with the medical evidence of record.  (Tr. 19.)

Though it is not legal error, per se, for an ALJ to
give greater weight to a consulting opinion than a treating

opinion, the ALJ has not provided adequate explanation why the non-examining State agency psychologist was afforded great weight. *See Rivera v. Colvin,* No. 13 Civ. 7150 (PGG) (HBP), 2015 WL 1027163 at *16-17 (S.D.N.Y. Mar. 9, 2015) (ALJ's reasoning in not giving controlling weight to treating source and affording "great weight" to consultative examiner without considering the several specific factors in deciding the weight was "patently deficient").

The ALJ's reasoning that Dr. Anderson's opinion deserved greater weight than treating source due to her "intimate familiarity with the disability program" does not address any of the six factors as outlined under the Act. *See* 416.927(d)(2). The ALJ's reasoning also does not appear sound when considering that he only afforded "significant weight" to the opinions of Dr. Porter, Dr. Thomas, and Dr. Theobald due to their one-time examination of the plaintiff, even though they are also specialists in their field of expertise and are internally consistent and generally consistent with the record. (Tr. 19.)

Plaintiff also argues, and the court agrees, that the ALJ erred in affording "great weight" to Dr. Anderson's opinion because she did not have the results of Dr. Theobald's post-hearing Full-Scale IQ test. (Pl. Br. 15.) A State Agency Official's report that is conclusory, stale, and based on

incomplete medical record is not substantial evidence. *See*
*Griffith v. Astrue*, No. 08-CV-6004, 2009 WL 909630, at *9 n. 9
(W.D.N.Y. July 27, 2009) (finding conclusory, outdated State
Agency Official's report, which was based on an incomplete
medical record, was not substantial evidence).  Dr. Theobald had
assessed plaintiff's WAIS-IV Full-Scale IQ score of 66 more than
two years after Dr. Anderson reviewed the evidence of record on
May 27, 2015.  (Tr. 61, 427-34.)  It would defy logic to
conclude that Dr. Anderson's opinion was not stale simply
because her opinion was consistent with the evidence that was
available at the time she reviewed the treatment records.  (Def.
Br. 12.)  Further, the case law cited by the government is
inapplicable, because the court finds that plaintiff's
subsequent treatment notes, including Dr. Theobald's report,
were a material development in the evidence reviewed by Dr.
Anderson.  (*Id.*)  Plaintiff's WAIS-IV IQ score is new and
significant medical evidence not previously available to the
state agency psychologist, and the court finds it is reasonable
to believe that it may have affected Dr. Anderson's opinion.
*See Camille v. Clovin*, 104 F. Supp.3d 329, 344 (2d Cir. 2015).

        Further, the ALJ makes no mention of the weight given
to the medical opinion of psychiatrist Dr. Shpitalnik, who saw
plaintiff on four occasions between September 2014 and March
2015.  (Tr. 345-51.)  The ALJ only discusses Dr. Shpitalnik's

exam findings as evidence that supports the overall stability in mental status (Tr. 19-20), despite the fact that Dr. Shpitalnik diagnosed plaintiff with PTSD and prescribed Lexapro and Seroquel.[7]  (Tr. 346-47.)

Accordingly, the court remands for the ALJ to provide good reasons Dr. Sherman's opinion was not given controlling weight and weigh Dr. Anderson's opinion in light of the substantial new evidence and consideration of the full record. Further, the court also remands with the direction that the ALJ consider the opinion of Dr. Shpitalnik, and adequately explain any weight given to that opinion.

## CONCLUSION

Federal regulations explicitly authorize a court, when reviewing decisions of the SSA, to order further proceedings when appropriate.  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Remand is warranted where "there are gaps in the administrative record or the ALJ has applied an improper legal standard."  *Rosa v. Callahan*, 168 F.3d 72, 82-83 (quoting *Pratts v. Charter*, 94 F.3d

---

[7] Lexapro is a selective serotonin reuptake inhibitor (SSRI) used to treat depression and anxiety; Seroquel is an antipsychotic used to treat major depression and bipolar disorder.

34, 39) (internal quotation marks omitted).  Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.  *Pratts*, 94 F.3d at 39.  However, if the record before the court provides "persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," the court may reverse and remand solely for the calculation and payment of benefits.  *See, e.g.*, *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980); *Kane v. Astrue*, 942 F. Supp. 2d 301, 314 (E.D.N.Y. 2013).

For the reasons previously set forth, the court grants plaintiff's motion for judgment on the pleadings; denies defendant's cross-motion for judgment on the pleadings; and remands this case for further proceedings consistent with this Memorandum and Order.  The Clerk of Court is respectfully directed to close this case and enter judgment in favor of plaintiff.

**SO ORDERED.**

/s/

Hon. Kiyo A. Matsumoto
United States District Judge


Dated:    June 1, 2020
          Brooklyn, New York